# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MONICA VONBERCKEFELDT, | ) | 1:09cv01927 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Monica Vonberckefeldt ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her applications in January 2007, alleging disability since October 25, 2006, due to shoulder problems, stress, chest pain, diabetes, high blood pressure and carpal

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    tunnel syndrome.  AR 72-76, 121-128.  After her applications were denied initially and on

2    reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR

3    56-57, 58-62, 65-68.  ALJ Laura S. Havens held a hearing on October 2, 2008, and issued an

4    order denying benefits on March 4, 2009.  AR 19-28, 284-307.  On September 3, 2009, the

5    Appeals Council denied review.  AR 5-9.

6          Hearing Testimony

7          ALJ Havens held a hearing in Stockton, California, on October 2, 2008.  Plaintiff

8    attended the hearing with her attorney, Sengthiene Bosavanh.  Vocational expert ("VE") George

9    Myers also appeared and testified.  AR 284.

10         Plaintiff testified that she was born in 1962 and has a high school diploma.  AR 288.  She

11   last worked on October 25, 2006, when her doctor told her to stop working.  Plaintiff's last

12   position was an auto parts delivery driver, and prior to that, she worked as a care giver, hotel

13   housekeeper and thrift store worker.  AR 289.

14         Plaintiff lives in an apartment with her boyfriend.  She is able to dress herself, do a few

15   chores, cook, rinse dishes and put them into the dishwasher, do laundry and go grocery

16   shopping.  AR 290, 298.  Plaintiff does not have any hobbies and watches television about three

17   hours per day.  She has a driver's license and can drive about an hour.  AR 291.

18         Plaintiff testified that she has problems sleeping, and sleeps about six hours a night.  She

19   also has side effects from her medications, including diarrhea and constipation.  AR 292.

20   Plaintiff's diabetes medication "moderately" helps controls her blood sugars, though she still has

21   control problems.  AR 292.

22         Plaintiff estimated that she could walk and stand for about 30 minutes and could sit for

23   about an hour.  She could not lift more than one pound because of her shoulders.  AR 292, 294.

24   Plaintiff has pain in both shoulders and her back, elbows, wrists and knees.  She described the

25   pain as an "ache feeling, but burning," and said she has the pain pretty much all the time.  AR

26   292.  Plaintiff estimated that her pain, with medication, rated at a seven out of ten.  AR 293.

27         When questioned by her attorney, Plaintiff explained that she also has carpal tunnel

28   syndrome in both hands.  Her hands are painful and go numb and tingle.  This happens

throughout the day and especially at night.  AR 293.  She cannot use a computer because of her shoulders, though she later stated that she could type for about ten minutes.  AR 294.  She thought that she could reach for about five minutes before needing a break for an hour or two. AR 265-296.

Plaintiff also experiences fatigue everyday, throughout the day.  Her doctor does not know the cause of the fatigue, which Plaintiff usually deals with by sitting down.  She could do a job that required sitting all day as long as it didn't involve using her arms.  AR 297.

Plaintiff has hypertension that is uncontrolled and chest pain at least five or six times a day.  AR 297.  The pain is a sharp pain across her chest and lasts for two to three minutes.  AR 298.

Plaintiff also has depression for which she takes medication, but does not receive counseling.  She also has diarrhea once an hour for six out of seven days.  AR 303.  She has constipation on the other days when she "can't go."  AR 304.

The VE testified that Plaintiff's past work included the medium positions of delivery driver and home attendant, and the light positions of housekeeper and stock checker, retail.  AR 300.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff' age, education and past relevant work.  This person could sit for six hours, stand for six hours and walk for six hours.  This person could occasionally lift and carry 20 pounds, 10 pounds frequently, with no forceful pushing and pulling with the upper extremities.  This person could occasionally climb ladders and could occasionally reach overhead with the left upper extremity. This person could not perform forceful grasping or gripping bilaterally.  The VE testified that this person could perform Plaintiff's past work as a stock checker, as well as other jobs in the national economy.  For example, this person could perform the positions of office helper, cashier and ticket seller.  AR 300-301.

For the second hypothetical, the ALJ asked the VE  to assume that this person could sit for eight hours, stand for one hour and walk for one hour.  This person could lift and carry 10 pounds occasionally, 5 pounds frequently.  The VE testified that this person could not perform

1  Plaintiff's past work, but could perform the positions of order clerk, ticket counter and charge

2  account clerk.  AR 300-301.

3      The VE testified that the answers to the first hypothetical were consistent with the

4  Dictionary of Occupational Titles ("DOT").  As for the answers for the second hypothetical,

5  sedentary work generally requires the ability to stand or walk for up to two hours.  For the

6  positions identified, however, one hour walking and one hour standing would be more than

7  sufficient.  AR 302.

8      The ALJ also asked the VE what impact a limitation to occasional use of the upper

9  extremities would have on the identified positions.  The VE testified that it would affect all

10 positions identified, as would a requirement that the person be allowed to use the restroom once

11 every hour.  AR 305.

12     <u>Medical Evidence</u>

13     In December 2005, Plaintiff complained of chest pain.  Diagnostic tests were normal.

14 AR 174-187.

15     An MRI of Plaintiff's left shoulder taken on December 27, 2006, revealed severe

16 supraspinatus and subscapularis tendinopathy with findings consistent with intrasubstance partial

17 tendon tearing but no evidence of full-thickness rotator cuff tear.  It also showed markedly

18 attenuated anterior labrum suggesting a labral tear.  AR 143.

19     Plaintiff began physical therapy in January 2007.  AR 159.  On January 23, 2007,

20 Plaintiff saw Kenneth Honsik, M.D., and reported improvement with physical therapy.  Plaintiff

21 had been off work for eight weeks and wanted to return, if possible.  Plaintiff had excellent

22 internal and external rotation of the left shoulder.  Strength was 5/5.  Dr. Honsik indicated that

23 Plaintiff could return to modified light duty, with no lifting more than 10 pounds and no

24 overhead lifting.  AR 164.

25     A stress test performed on May 4, 2007, was negative for ischemia and Plaintiff did not

26 have chest pain during the test.  AR 220.

27     On May 15, 2007, State Agency physician B. J. Ginsburg, M.D., completed a Physical

28 Residual Functional Capacity form.  He opined that Plaintiff could lift and carry 20 pounds

occasionally, 10 pounds frequently, stand and/or walk about 6 hours and sit for about 6 hours.
Plaintiff could not perform forceful pushing or pulling with either upper extremity and could, at
best, perform light non-forceful pushing and pulling with her upper extremities.  Plaintiff could
occasionally climb ladders, ropes and scaffolds and could frequently climb ramps or stairs,
balance, stoop, kneel, crouch and crawl.  Plaintiff could not perform frequent overhead work
with her left upper extremity and could, at best, perform occasional overhead work with the left
upper extremity.  She could not perform forceful grasping, torquing or gripping with both hands,
but could perform non-forceful routine light frequent grasping with both hands.  AR 135-139.

On May 29, 2007, Plaintiff returned to Dr. Honsik, for persistent left shoulder pain.
Plaintiff reported that she had "somewhat improved" by doing her physical therapy exercises.
Rang of motion testing of the left shoulder was limited and there was tenderness to palpation at
the left subacromial space.  Dr. Honsik diagnosed left rotator cuff syndrome and a labral tear.
Dr. Honsik explained that Plaintiff could continue her current treatment and recommended that
she return to work with no repetitive overhead lifting or any heavy lifting.  Plaintiff could also
undergo a cortisone injection or arthroscopic surgery.  Plaintiff indicated that the mechanical
symptoms are infrequent and she did not want to undergo surgery.  Plaintiff chose to continue
with her home exercises and medication.  AR 153-154.

On June 19, 2007, Plaintiff told Kathleen Kearns, M.D., that she was having trouble
sleeping, possibly because of her pain medication.  She was also "very stressed" over finances.
Plaintiff was seeing another doctor for left shoulder pain and would "consider return to work"
and a cortisone shot.  AR 146.

Plaintiff returned to Dr. Kearns on July 17, 2007, and complained of insomnia, fatigue
and left shoulder pain.  She reported, however, that her left shoulder pain was improved and Dr.
Kearns noted that her diabetes was "suboptimal, but improved."  She was 5 feet, 2 inches tall and
weighed 205 pounds.  AR 145.

1    On October 25, 2007, Plaintiff told Dr. Kearns that she was frustrated and stressed about

2    money.  She could not eat and felt tired all the time.  AR 225.  Dr. Kearns prescribed an anti-

3    depressant.  AR 224.

4    On January 2, 2008, Plaintiff reported that she felt a little better and that her diabetes was

5    under better control.  She also reported that her fatigue had improved somewhat.  Plaintiff denied

6    joint pain.  AR 224.

7    In March 2008, Dr. Kearns noted that Plaintiff's tachycardia and pain had improved with

8    medication.  Plaintiff was also sleeping better.  AR 223.

9    On March 24, 2008, Dr. Kearns completed a Questionnaire and indicated that Plaintiff

10   was not precluded from full-time work, but could not perform more than sedentary work.  Dr.

11   Kearns listed Plaintiff's primary impairments as fatigue, intermittent chest pain and recurrent left

12   shoulder pain.  Dr. Kearns noted that there were "no objective findings except mildly elevated

13   ESR."  Plaintiff could sit for eight hours in one day and stand and/or walk for one hour.  She did

14   not need to lay down or elevate her legs.  Plaintiff would also have limitations with the use of her

15   hands due to numbness and probable carpal tunnel syndrome ("CTS"), though Dr. Kearns could

16   not evaluate the exact limitations.  She could lift 10 pounds both frequently and occasionally.

17   AR  246-247.

18   Plaintiff underwent nerve conduction studies on April 8, 2008.  The tests suggested

19   median nerve neuropathy at the wrist bilaterally and suggested severe CTS on the right and

20   moderate CTS on the left.    AR 251-252

21   On September 25, 2008, Dr. Kearns completed a second Questionnaire.  She indicated

22   that she was "unable to assess" whether Plaintiff's medical problems would preclude her from

23   full-time work.  Plaintiff's primary impairments were listed as fatigue, unclear etiology, bilateral

24   CTS and left shoulder impingement syndrome.  Objective evidence included a nerve conduction

25   study and left shoulder MRI.  During an eight hour day, Plaintiff could sit for eight hours and

26   stand/walk for one hour.  She did not need to lay down or elevate her legs.  Plaintiff could lift

27   five pounds frequently and ten pounds occasionally.  Dr. Kearns noted that Plaintiff had severe

28

6

1    CTS in her right hand and moderate CTS in her right hand, though she could not assess her hand

2    limitations.  AR 248-249.

3    *Evidence Submitted to Appeals Council*

4    On April 7, 2009, Plaintiff told Dr. Kearns that her fatigue had been worse for the past

5    three to four days and that it was becoming difficult to perform her activities of daily living.  AR

6    268.

7    On April 28, 2009, Dr. Kearns submitted a third Questionnaire.  She could not assess

8    whether Plaintiff could perform full time work.  She was also unable to assess Plaintiff's ability

9    to sit, stand or walk.  She indicated that Plaintiff "reports fatigue that is interfering with her

10   everyday life and activities of daily living."  Plaintiff would also have limited use of her left

11   shoulder.  Plaintiff could lift less than 10 pounds frequently, as to the right side only, and less

12   than 10 pounds occasionally.  Dr. Kearns was unable to assess hand limitations, though she

13   noted that Plaintiff would be markedly limited due to bilateral CTS.  Dr. Kearns could not

14   indicate the onset of disability but stated that her symptoms have waxed and waned since

15   September 21, 2006.  AR 279-280.

16   Plaintiff returned to Dr. Kearns on June 18, 2009.  She reported that her fatigue was the

17   same and that she was having frequent nightmares.  The braces helped her CTS, though a

18   cortisone shot in her right shoulder helped only temporarily.  AR 266.

19   Dr. Kearns submitted a letter dated June 23, 2009, in which she indicated that Plaintiff

20   suffered from numerous medical conditions, including fatigue, insomnia, chest pain, headaches,

21   depression, obesity, severe tendinopathy of the left shoulder, bilateral CTS, iron deficiency

22   anemia, vitamin D deficiency, uncontrolled insulin dependent diabetes and tachycardia.  Dr.

23   Kearns also noted that Plaintiff's Body Mass Index was 37.  Dr. Kearns believed that, at least for

24   the next 12 months, her conditions would preclude work activity.  AR 263.

25   Treatment notes from Pete Thompson, L.C.S.W., dated July 23, 2009, indicate that

26   Plaintiff was depressed and frustrated.  Plaintiff told Mr. Thompson that the only thing he could

27   do for her was "write her a check."  AR 260.

28

1    <u>ALJ's Findings</u>

2        The ALJ determined that Plaintiff had the severe impairments of bilateral CTS, fatigue,

3    left shoulder impingement syndrome and chest pains.  Despite this, the ALJ determined that

4    Plaintiff could perform light work with no forceful pushing or pulling with the upper extremities,

5    only occasional climbing of ladders, only occasional reaching overhead with the left upper

6    extremity and no forceful grasping, torquing or gripping bilaterally.  Based on this residual

7    functional capacity ("RFC"), the ALJ found that Plaintiff could perform her past work as a stock

8    checker, retail.  Alternatively, Plaintiff could perform a significant number of jobs in the national

9    economy.  AR 24-27.

10                          **SCOPE OF REVIEW**

11       Congress has provided a limited scope of judicial review of the Commissioner's decision

12   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

13   the Court must determine whether the decision of the Commissioner is supported by substantial

14   evidence.  <u>42 U.S.C. 405</u> (g).  Substantial evidence means "more than a mere scintilla,"

15   <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a preponderance.  <u>Sorenson v.</u>

16   <u>Weinberger</u>, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

17   reasonable mind might accept as adequate to support a conclusion."  <u>Richardson</u>, 402 U.S. at

18   <u>401</u>.  The record as a whole must be considered, weighing both the evidence that supports and

19   the evidence that detracts from the Commissioner's conclusion.  <u>Jones v. Heckler,</u> 760 F.2d 993,

20   <u>995 (9th Cir. 1985)</u>.  In weighing the evidence and making findings, the Commissioner must

21   apply the proper legal standards.  <u>E.g.</u>, <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

22   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

23   Secretary applied the proper legal standards, and if the Commissioner's findings are supported

24   by substantial evidence.  <u>See</u> <u>Sanchez v. Sec'y of Health and Human Serv.</u>, 812 F.2d 509, 510

25   <u>(9th Cir. 1987)</u>.

26                          **REVIEW**

27       In order to qualify for benefits, a claimant must establish that he is unable to engage in

28   substantial gainful activity due to a medically determinable physical or mental impairment which

has lasted or can be expected to last for a continuous period of not less than 12 months.  42

U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

such severity that he is not only unable to do her previous work, but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

Cir. 1990).

      In an effort to achieve uniformity of decisions, the Commissioner has promulgated

regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ

found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

her disability; (2) has an impairment or a combination of impairments that is considered "severe"

(bilateral CTS, fatigue, left shoulder impingement syndrome and chest pains) based on the

requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or

combination of impairments which meets or equals one of the impairments set forth in Appendix

1, Subpart P, Regulations No. 4; (4) can perform her past relevant work, or alternatively, (5)

retains the RFC to perform a significant number of jobs in the national economy.  AR 24-27.

      Here, Plaintiff argues that the ALJ erred by (1) applying the "substantial evidence"

standard; (2) failing to consider Plaintiff's obesity; (3) rejecting Dr. Kearns' opinions; (4)

rejecting Plaintiff's testimony; and (5) finding that Plaintiff could return to her past relevant

work.

## DISCUSSION

A.    ALJ's Standard of Review

      Plaintiff contends that the ALJ incorrectly applied the lesser "substantial evidence"

standard in supporting her RFC finding.  In support, she cites the ALJ's statement that

"substantial evidence of record, including the opinions of the DDS physicians, as well as the

objective medical evidence of record, supports the above residual functional capacity."  AR 27.

1    Plaintiff argues that "substantial evidence" is an appellate standard and that the ALJ should have

2    used the "preponderance of the evidence" standard to support her findings.

3            Plaintiff is correct that an ALJ "must base the decision on the preponderance of the

4    evidence offered at the hearing or otherwise included in the record."  20 C.F.R. § 404.953(a).

5    Plaintiff is also correct that the ALJ stated that her RFC finding was supported by "substantial

6    evidence."  AR 27.  This single use of "substantial evidence" does not, however, demonstrate

7    that the ALJ applied the "substantial evidence" standard.  Rather, given the context in which the

8    term appears, the ALJ seems to have used the term as a descriptive term and not as a definitive

9    statement of the standard of proof applied to the overall decision.

10           Insofar as Plaintiff argues that the ALJ also applied an incorrect legal standard when she

11   rejected Plaintiff's credibility in part because her treating physicians did not opine that she was

12   "totally and permanently disabled from any kind of work," the issue will be discussed below.

13           Plaintiff's claim is therefore without merit.

14   B.      Plaintiff's Obesity

15           Plaintiff next argues that the ALJ failed to consider her obesity in combination with her

16   other impairments.

17           Pursuant to SSR 02-1p, obesity must be considered throughout the sequential evaluation

18   process, including when determining an individual's RFC.  "The combined effects of obesity

19   with other impairments may be greater than might be expected without obesity."  SSR 02-1p.

20   The Ninth Circuit has held that, pursuant to SSR 02-1p, the ALJ must consider obesity in

21   determining RFC based on the information in the case record.  Burch v. Barnhart, 400 F.3d 676,

22   683 (9th Cir. 2005).

23           Plaintiff attempts to fault the ALJ for not discussing her obesity and its impact on her

24   other impairments.  While the ALJ is required to consider obesity in a multiple impairment

25   analysis, he must do so only where it is "clear from the record that [the claimant's] obesity ...

26   could exacerbate her reported illnesses.  Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003);

27   see also Burch, at 682 (9th Cir.2005) (distinguishing Celaya and concluding that a multiple

28   impairment analysis is not required where "the medical record is silent as to whether and how

1  claimant's obesity might have exacerbated her condition" and "the claimant did not present any

2  testimony or other evidence ... that her obesity impaired her ability to work").

3      Although the record often indicates her weight and she was described as obese two or

4  three times, the record is devoid of any indication that her obesity exacerbates her impairments.

5  In fact, Dr. Kearns did not even mention Plaintiff's weight on her first three questionnaires from

6  March 2008, September 2008 and April 2009.  AR 246, 248.  The record also lacks any

7  limitations resulting from her obesity.  Plaintiff did not cite her weight in her application nor did

8  she testify about her weight.  Not surprisingly, Plaintiff also fails to cite to any such evidence in

9  her opening brief.

10      Where there is no indication in the record that Plaintiff's obesity exacerbates her

11  impairments or causes further limitations, and where Plaintiff did not make such allegations

12  before the ALJ, the ALJ cannot be faulted for not discussing Plaintiff's weight.  Indeed, if the

13  ALJ offered his opinions in such cases, he would be improperly inserting his own medical

14  opinion.

15      The ALJ's treatment of Plaintiff's impairments is supported by substantial evidence and

16  is free of legal error.

17  C.   Dr. Kearns' Opinions

18      Plaintiff contends that both the ALJ and Appeals Council erred by failing to state reasons

19  for rejecting Dr. Kearns' opinions.  Plaintiff also believes that the ALJ's decision to give

20  significant weight to the opinion of State Agency physician Ginsburg was not supported by

21  substantial evidence.

22      Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

23  who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

24  (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

25  physicians).  As a general rule, more weight should be given to the opinion of a treating source

26  than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

27  647 (9th Cir.1987).  At least where the treating doctor's opinion is not contradicted by another

28  doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d

11

1  1391, 1396 (9th Cir.1991).  Even if the treating doctor's opinion is contradicted by another

2  doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

3  reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722

4  F.2d 499, 502 (9th Cir.1983).

5       The opinion of an examining physician is, in turn, entitled to greater weight than the

6  opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990);

7  *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a treating

8  physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

9  uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion

10  of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

11  can only be rejected for specific and legitimate reasons that are supported by substantial

12  evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

13       The opinion of a nonexamining physician cannot, by itself, constitute substantial

14  evidence that justifies the rejection of the opinion of either an examining physician or a treating

15  physician.  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the

16  ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of

17  a nonexamining medical advisor.  *E.g.*, *Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th

18  Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995).  For

19  example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating

20  physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the

21  opinions of Magallanes's treating physicians...."  *Magallanes*, 881 F.2d at 752 (emphasis in

22  original).  Rather, there was an abundance of evidence that supported the ALJ's decision: the

23  ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on

24  testimony from the claimant that conflicted with her treating physician's opinion.  *Id*. at 751-52.

25       The medical record before the ALJ contained opinions from three sources.  On May 16,

26  2007, State Agency physician Dr. Ginsburg set forth a light RFC with reaching limitations that

27  the ALJ ultimately adopted.  AR 135-139.  On May 29, 2007, Dr. Honsik, who treated Plaintiff

28

1   for a limited time, opined that Plaintiff could return to work with no repetitive overhead or heavy

2   lifting.  AR 153.

3          Plaintiff's treating physician, Dr. Kearns, completed two questionnaires prior to the

4   ALJ's decision.  In March 2008, she opined that Plaintiff was not precluded from working full

5   time, but could only perform sedentary work.  Plaintiff could lift 10 pounds frequently and

6   occasionally, sit for 8 hours and stand for one hour.  Plaintiff would have limitations with her

7   hands, though Dr. Kearns was unable to assess such limitations.  AR 246.  In September 2008,

8   Dr. Kearns indicated that she was unable to assess whether Plaintiff could work.  She could lift

9   "10 ?" pounds occasionally, "5 ?" pounds frequently, sit for "8 ?" hours and stand for "one ?"

10  hour.  Dr. Kearns was again unable to assess Plaintiff's hand limitations.  AR 248.

11         In her decision, the ALJ set forth Dr. Kearns' lifting limitations from her most recent

12  opinion.  AR 26.  She also set forth Dr. Ginsburg's opinion and gave it "substantial weight,"

13  explaining that it was well supported by the evidence.  AR 27.

14         Plaintiff is correct that the ALJ doesn't specifically explain why she rejected Dr. Kearns'

15  opinions.  Although the ALJ need not recite the incantation "I reject the treating physician's

16  opinions because ...," the record must reveal specific, legitimate inferences that may be drawn

17  from the ALJ's opinion justifying the decision not to adopt the treating physician's opinion.

18  _Magallanes,_ 881 F.2d at 755.

19         Here, the ALJ neither directly nor indirectly suggests why she rejected Dr. Kearns'

20  opinions.  In fact, the ALJ did not even discuss the entire September 2008 opinion and instead

21  stated only, "[w]ith respect to the carpal tunnel syndrome, her doctor has opined that the

22  claimant can lift 5 pounds frequently and 10 pounds occasionally."  AR 26.  The ALJ also noted

23  that Dr. Kearns did not preclude full-time work, but she failed to discuss Dr. Kearns' belief that

24  Plaintiff would be limited to sedentary work.  AR 26.

25         More importantly, it would be a stretch for the Court to make any "specific, legitimate"

26  inferences from the ALJ's decision.  Dr. Kearns' opinions, while they may have placed Plaintiff

27  in a different exertional category and may ultimately affected the outcome, were not significantly

28  different than Dr. Ginsburg's so as to make any inferences distinguishing the two obvious.  In

1  other words, the Court cannot make any meaningful inferences from the ALJ's reasons for

2  accepting Dr. Ginsburg's opinion.

3       To the extent that Defendant suggests reasons for the rejection, the attempt amounts to an

4  improper post hoc rationalization. *Pinto v. Massanari,* 249 F.3d 840, 847 (9th Cir. 2001) ("we

5  cannot affirm the decision of an agency on a ground that the agency did not invoke in making its

6  decision."). For example, Defendant contends that Dr. Kearns' March 2008 opinion was

7  unreliable because Dr. Kearns relied "mostly on Plaintiff's symptoms rather than on objective

8  medical evidence, and assessed limitations going back to 2001 and predating Plaintiff's alleged

9  onset of disability by more than 5 years." Opposition, 7. While this may be true, this rationale is

10  not evident anywhere in the ALJ's decision. Similarly, Defendant suggests that the opinions

11  were inconclusive because Dr. Kearns indicated that she was unable assess certain limitations.

12  Again, this may be a valid reason for rejecting the opinions, but the Court cannot affirm the

13  ALJ's treatment of the medical evidence on a basis that is not referenced, either directly or

14  indirectly, in the ALJ's decision.

15       The ALJ's improper treatment of Dr. Kearns' opinion is somewhat magnified by her

16  adoption of the State Agency opinion. In certain instances, the ALJ may rely on the opinion of

17  the State Agency to reject the opinion of the treating source. Here, however, not only was the

18  ALJ unclear as to why she rejected Dr. Kearns' opinions, but the basis upon which she adopted

19  Dr. Ginsburg's opinion was at least partly incorrect. Specifically, the ALJ states that she gives

20  "significant weight" to Dr. Ginsburg's opinion because "it was based upon a thorough review of

21  the evidence." AR 27. Dr. Ginsburg's opinion, however, was given in May 2007, almost one

22  year prior to the April 2008 nerve conduction studies that suggested bilateral wrist median nerve

23  neuropathy, severe CTS on the right and moderate CTS on the left. AR 251-252

24       Therefore, the ALJ's treatment of the medical evidence was not supported by substantial

25  evidence and was not free of legal error. Remand will be discussed at the end of this opinion.

26

27

28

D.    Plaintiff's Testimony

Plaintiff argues that the ALJ erred in assessing her credibility.

In _Orn v. Astrue_, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other
> non-exertional impairment.  _See Fair v. Bowen_, 885 F.2d 597, 603 (9th Cir.1989).
> However, to discredit a claimant's testimony when a medical impairment has been
> established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" _Morgan_,
> 169 F.3d at 599 (quoting _Lester_, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why
> the [claimant's] testimony is unpersuasive." _Id._  Where, as here, the ALJ did not find
> "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting
> the claimant's testimony must be clear and convincing." _Id._
>
> Social Security Administration rulings specify the proper bases for rejection of a
> claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be
> supported by reasons that do not comport with the agency's rules.  _See_ 67 Fed.Reg. at
> 57860 ("Although Social Security Rulings do not have the same force and effect as the
> statute or regulations, they are binding on all components of the Social Security
> Administration, ... and are to be relied upon as precedents in adjudicating cases."); _see
> Daniels v. Apfel,_ 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at
> step three of the disability determination was contrary to agency regulations and rulings
> and therefore warranted remand).  Factors that an ALJ may consider in weighing a
> claimant's credibility include reputation for truthfulness, inconsistencies in testimony or
> between testimony and conduct, daily activities, and "unexplained, or inadequately
> explained, failure to seek treatment or follow a prescribed course of treatment." _Fair_,
> 885 F.2d at 603; _see also Thomas_, 278 F.3d at 958-59.

In rejecting Plaintiff's testimony, the ALJ first explained that "the record does not

contain evidence which shows that the claimant is functionally unable to work."  AR 26.

Similarly, the ALJ explained that none of Plaintiff's physicians have opined that she is totally

and permanently disabled from any kind of work.  AR 26.  Although Plaintiff argues that these

are not the standards by which a person is found disabled, the ALJ was not citing them in that

capacity.  Instead, the ALJ used the lack of affirmative evidence that Plaintiff was unable to

work to question her claim that she cannot work.  Contrary to Plaintiff's assertion, the treating

sources had opportunities to offer opinions on Plaintiff's abilities and either concluded that she

1   could work in some capacity (Dr. Honsik's May 2007 opinion and Dr. Kearns' March 2008

2   opinion) or could not provide an answer (Dr. Kearns remaining opinions).[2]

3        The ALJ next explained that Plaintiff had not generally received the type of treatment

4   that one would expect for a disabled individual.  Plaintiff's treatment was conservative and she

5   had little treatment for her "allegedly severe carpal tunnel syndrome and shoulder impairment."

6   The ALJ also noted that Plaintiff was maintained on analgesic medication, rather than stronger

7   narcotics.  AR 26.  _Parra v. Astrue_, 481 F.3d 742, 750 (9th Cir. 2007) (evidence of "conservative

8   treatment," such as a claimant's use of only over-the-counter pain medication, is sufficient to

9   discount a claimant's testimony regarding severity of an impairment).  Plaintiff argues that her

10  conservative treatment is the result of her physician's medical judgments and should not be used

11  against her.  While this may be true, the ALJ is entitled to question the severity of a claimant's

12  allegations based on the conservative nature of the treatment.

13       The ALJ next explained that Plaintiff's subjective complaints were not supported by her

14  "active life that includes dressing, bathing, cooking, doing chores including the laundry, driving

15  and going grocery shopping."  AR 26.  While an ALJ is entitled to examine a plaintiff's daily

16  activities in the credibility analysis, the Court questions whether these activities can be

17  characterized as constituting an "active life."  Even if the Court finds error, however, the

18  credibility analysis will not fail because of one improper consideration.  _Batson v. Barnhart_, 359

19  F.3D 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one

20  reason may have been in error).

21       Finally, the ALJ noted that despite Plaintiff's complaints of constant chest pain, the

22  objective tests did not reveal any abnormalities.  AR 26.  An ALJ may consider lack of objective

23  evidence so long as it is not the sole reason for rejecting credibility.  _Lester v. Chater_, 81 F.3d

24  821, 834 (9th Cir. 1996).

25

26

27       [2] Plaintiff suggests that because the ALJ did not mention Dr. Kearns' opinion in evaluating the medical evidence, Dr. Kearns' opinions cannot be used to discredit Plaintiff's testimony.  While the ALJ did not provide a sufficient analysis of the medical evidence, she did specifically state, in assessing Plaintiff's credibility, that "none of

28  claimant's physicians have opined that she is totally and permanently disabled from any kind of work."  AR 26. From this, the Court can infer that the ALJ was referring in part to Dr. Kearns' March 2008 opinion.

1   The ALJ's credibility analysis was supported by substantial evidence and free of legal

2   error.

3   E.      Step Four Finding

4       Finally, Plaintiff challenges the ALJ's step four finding that she could return to her past

5   relevant work as a "stock checker, retail."  AR 27.  Plaintiff contends that the VE identified her

6   past work as a thrift store worker as 299.677-010 in the DOT, which corresponds to sales

7   attendant.  Plaintiff explains that she has never performed the position of sales attendant.  She

8   also questions whether her work qualified as substantial gainful activity.

9       The step four determination involves a comparison between the demands of the

10  claimant's former work and her present capacity.  _Villa v. Heckler_, 797 F.2d 794, 799 (9th Cir.

11  1986).  It is Plaintiff's burden to demonstrate that she is unable to return to her previous job, and

12  if she is unable to do so, the burden remains with her rather than shifting to Secretary to proceed

13  with step five.  _Matthews v. Shalala_, 10 F.3d 678 681 (9th Cir. 1993).  Although the burden of

14  proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual

15  findings to support his conclusion.  SSR 82-62.  Information regarding a claimant's past relevant

16  work as performed may come from the claimant's testimony or a properly completed vocational

17  report.  _Pinto v. Massanari_, 249 F.3d at 845.  The best source for how a job is generally

18  performed is usually the DOT.  _Id_. at 845-86.

19      Plaintiff correctly notes that the VE classified her past work as a thrift store sorter as that

20  of sales attendant.  According to the DOT code identified by the VE, 299.677-010, sales

21  attendant includes the duties of aiding customers in locating merchandise, answering customer

22  questions, obtaining merchandise from the stockroom, arranging stock on shelves, directing

23  customers to fitting rooms or the cashier, keeping merchandise in order, marking merchandise

24  and/or inventorying stock.  AR 108, 122, 130.  It is unclear from the record, however, whether

25  Plaintiff's sorter position at the thrift store included any of these duties.  The ALJ therefore

26  failed to clarify the exact nature of Plaintiff's past relevant work.  SSR 82-62.

27      Nonetheless, the ALJ continued with the sequential evaluation and made an alternate step

28  five finding.  AR 27.  Specifically, she found that Plaintiff could perform the positions of office

17

1  helper, cashier and ticket seller.  AR 27.  Plaintiff does not dispute the step five finding and any

2  error at step four is therefore harmless.  *Stout v. Comm'r Soc. Sec.*, 454 F.3d 1050, 1056 (9th Cir.

3  2006).

4  F.     Remand

5         Section 405(g) of Title 42 of the United States Code provides: "the court shall have the

6  power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

7  or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

8  In social security cases, the decision to remand to the Commissioner for further proceedings or

9  simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d

10  599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original

11  administrative proceedings, a social security case should be remanded.  Where, however, a

12  rehearing would simply delay receipt of benefits, reversal and an award of benefits is

13  appropriate."  *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859

14  F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no

15  useful purpose would be served by further administrative proceedings, or where the record has

16  been thoroughly developed.").  The Court will discuss the remedy at the end of this opinion

17         Here, the Court has determined that the ALJ improperly evaluated the opinion evidence.

18  The error can be fixed on remand, however, by properly evaluating the medical evidence

19  and clarifying opinions, if necessary.  Plaintiff urges the Court to remand for payment of benefits

20  based on *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), but Dr. Kearns' opinions cannot be

21  credited because they are not necessarily complete.

22

23

24

25

26

27

28

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Monica Vonberckefeldt and against Defendant Michael J. Astrue, Commissioner of Social Security.


IT IS SO ORDERED.

**Dated:    September 27, 2010           /s/ Dennis L. Beck**
                                        UNITED STATES MAGISTRATE JUDGE