**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MONICA VONBERCKEFELDT, | ) | 1:09cv1927 DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING |
| Plaintiff, | ) | PETITION FOR FEES |
| | ) | |
| v. | ) | (Document 21) |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on a petition for attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), filed on December 8, 2010, by Plaintiff Monica VonBerckefeldt ("Plaintiff"). Defendant filed an opposition on January 28, 2011, arguing that the fee requested is unreasonable and should be reduced. Plaintiff filed her reply on February 15, 2011.

On April 8, 2011, the Court held a hearing on the petition to explore whether Ralph Wilborn, who is not a member of the Bar of this Court or the California Bar, can recover fees under EAJA. Linda Ziskin appeared on behalf of Plaintiff and Shea Bond appeared on behalf of the Commissioner. The Court also ordered the parties to submit additional briefing, which was completed on June 29, 2011.

The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

# BACKGROUND

Plaintiff filed the instant Complaint challenging the denial of benefits on October 30, 2009.

On September 28, 2010, the Court granted Plaintiff's Complaint and remanded the action for further proceedings. Specifically, the Court found that the ALJ erred by failing to explain why she rejected the opinion of the treating physician.

Judgment was entered in favor of Plaintiff on September 28, 2010.

By this motion, Plaintiff seeks $9,083.25 in attorneys' fees. In opposition, Defendant contends that EAJA fees should be denied because the Commissioner's position was substantially justified. Alternatively, the Commissioner contends that the requested fees are unreasonable and suggests that the Court award no more than $5,507.94 in attorneys' fees.

# DISCUSSION

I.   Mr. Wilborn's Entitlement to Fees

A.   *Background*

The instant application seeks recovery of fees for work performed by attorneys Sengthiene Bosavanh and Ralph Wilborn.[2] While Ms. Bosavanh is a member of the California State Bar and the Bar of this Court, Mr. Wilborn is not.

Mr. Wilborn is a member of the Oregon State Bar and resides in Arizona. He is also a member of the United States District Court for the District of Oregon, the Ninth Circuit Court of Appeals, the United States Court of Appeals for Veterans Claims and the United States Supreme Court. December 16, 2010, Affidavit of Ralph Wilborn.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.

[2] In determining whether Mr. Wilborn is entitled to recover EAJA fees in this Court, the Court stresses that it is not questioning the *quality* of his work. Mr. Wilborn's work product has been consistently as good, or better, than many Social Security practitioners that appear regularly before this Court.

1    Pursuant to his Declaration, he began performing legal work for Ms. Bosavanh in July
2 2009 based on the understanding that his sole compensation would be the fees awarded for his
3 time under EAJA.  Mr. Wilborn's legal work included "primary research and drafting of briefs
4 and ancillary related legal work, at the federal district court level, for, and at the request of, Ms.
5 Bosavanh, as generally authorized under her clients' retainer agreements, on a temporary basis,
6 case-by-case."  The parties agreed that Mr. Wilborn's drafts of briefs submitted to Ms. Bosavanh
7 would be considered, by him, to be "finished work products, appropriate for filing, with little, if
8 any, revision required."  They further agreed that as a member of the Bar of this Court and the
9 Bar of the State of California, Ms. Bosavanh had absolute authority to revise his legal work at her
10 sole discretion and would file the documents under her name in compliance with Local Rules and
11 Federal Rule of Civil Procedure 11.  There was no written agreement, though the parties agreed
12 that compensation for his legal work would be entirely separate from compensation for Ms.
13 Bosavanh's legal work.  May 13, 2011, Declaration of Ralph Wilborn.

14    In September 2010, Mr. Wilborn advised Ms. Bosavanh that he would finish his legal
15 work on cases he had already started but would not perform legal work on new cases.  May 13,
16 2011, Declaration of Ralph Wilborn.  Mr. Wilborn has provided legal services in approximately
17 68 cases in this Court.  June 6, 2011, Declaration of Ralph Wilborn.

18    The Commissioner has no objection to Mr. Wilborn's receipt of fees under EAJA.

19 B.    *Analysis*

20    Local Rule 180(b) states, "(e)xcept as otherwise provided herein, only members of the
21 Bar of this Court shall practice in this Court."  Admission to the Bar of this Court is limited to
22 attorneys who are active members in good standing of the State Bar of California.  Local Rule
23 180(a).  However, attorneys who are not members of this Court's Bar may appear pro hac vice.
24 Local Rule 180(b)(2) provides:

> (2) Attorneys Pro Hac Vice. An attorney who is a member in good standing of, and eligible to practice before, the Bar of any United States Court or of the highest Court of any State, or of any Territory or Insular Possession of the United States, and who has been retained to appear in this Court may, upon application and in the discretion of the Court, be permitted to appear and participate in a particular case.  Unless authorized by the Constitution of the United States or an Act of Congress, an attorney is not eligible to practice pursuant to (b)(2) if any one or more of the following apply: (i) the attorney

3

resides in California, (ii) the attorney is regularly employed in California, or (iii) the attorney is regularly engaged in professional activities in California.

The Local Rules of this Court also expressly adopt the "standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California and court decisions applicable thereto" for practice before this Court. Local Rule 180(e).

It is undisputed that Mr. Wilborn is not a member of the California Bar or the Bar of this Court. It is also undisputed that Mr. Wilborn has not applied for admission pro hac vice.

The Fourth Circuit Court of Appeals recently issued an instructive decision. In Priestley v. Astrue, __F.3d__, 2011 WL 2641273, *1 (4th Cir. 2011), the Court held that the use of non-admitted lawyers for brief writing services in Social Security appeals did not present a "special circumstance" sufficient to deny fees as unjust under EAJA. In Priestley, plaintiffs in three Social Security appeals in the District of South Carolina sought fees for an attorney who was admitted to the Court, as well as fees for two attorneys who were not admitted to practice in South Carolina or before the Court. The non-admitted attorneys were licensed in Georgia and Pennsylvania and practiced their specialty of briefing Social Security appeals through their law firm in Georgia. They provided research and drafts of briefs to the admitted attorney for review, signing and filing, and never spoke with the client or opposing counsel. The two attorneys had worked on dozens of cases in the District of South Carolina since 2003 and their fee requests typically accounted for 75 to 85 percent of the total fees requested. After the Commissioner opposed the fee requests, the District Court denied the fees because the two attorneys were not admitted to practice law in South Carolina and were not admitted to practice pro hac vice. The District Court concluded that the out-of-state attorneys' lack of licensure was a "special circumstance" that made reimbursement of their fees "unjust." 28 U.S.C. § 2412(d)(1)(A).

In rejecting the District Court's conclusion, the Court of Appeals began with an analysis of EAJA's requirement that a district court award "fees and other expenses" to the prevailing party in a civil action against the United States unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 2011 WL 2641273, *3. The Court then defined the term "fees and other expenses," and found

4

that the broad definition "indicates, without much doubt, that Congress intended to award a wide range of fees and expenses" unless an exception applies. 2011 WL 2641273, *4. Consistent with this intent, the Court previously awarded EAJA fees for work performed not only by attorneys, but also by persons doing "tasks traditionally performed by an attorney and for which the attorney would customarily charge the client, regardless of whether a licensed attorney, paralegal or law clerk performed them." 2011 WL 2641273, *4 (citation omitted). Based on this practice, the Court had "little difficulty in concluding that the EAJA authorizes the plaintiffs to receive reimbursement for the work performed by an attorney, regardless of whether the attorney performing the work is admitted to practice or not." 2011 WL 2641273, *4. The Court concluded:

> In relying on this reasoning, we believe that the district court improperly linked the requirements for the practice of law in the district court with the requirements of the EAJA, thus limiting the scope of fees that the EAJA otherwise authorizes. And in doing this, the court ended up effectively sanctioning out-of-state attorneys for purported violations of its local rules by denying reimbursement for their fees under the EAJA. We conclude that the issues should not be so mixed, at least in the circumstances of this case, as they actually are separate matters.
>
> The district court was, of course, rightfully concerned about the unauthorized practice of law in its court, and it has the authority to regulate that through local rules and an array of appropriate sanctions. We need not determine, however, whether Martin and Naides violated any local rules or, if they did, what the appropriate sanctions would be, because the violation in question, if any, was so attenuated and technical that it would not affect the plaintiffs' claims for fee awards under the EAJA, which does not condition eligibility for reimbursement on whether an attorney is admitted.

2011 WL 2641273, *4-5.

The Court of Appeals also explained why it rejected the dissent's contention that the out-of-state attorneys "appeared" in the District Court such that their work constituted the unauthorized practice of law:

> Indeed, their role was quite limited. Martin and Naides never physically appeared in court or before the judge; they never filed a brief or paper in the court; they never communicated with opposing counsel; they never even communicated with the plaintiffs; their work agreement was with McChesney, a member of the district court bar, and not with the plaintiffs; and they prepared only drafts of briefs and papers which they then submitted to McChesney for editing, signing, and filing with the court. Even though their names were sometimes included on briefs as attorneys for the plaintiffs and they stated in their EAJA affidavits that they were attorneys for plaintiffs, the nature of their brief-writing function in supporting McChesney never changed. See, e.g., Dietrich Corp. v. King Res. Co., 596 F.2d 422 (10th Cir.1979). Indeed, McChesney could just as well have retained an English professor or law professor to assist him in writing briefs and

5

submitted those charges as paralegal type fees, with a legitimate expectation that his clients would receive reimbursement.

The facts of Mr. Wilborn's involvement in this action are almost identical. He has provided drafts of briefing to Ms. Bosavanh, who is admitted to practice before this Court, for review, signing and filing. He does not discuss the case with the client or opposing counsel, does not indicate that he is counsel for Plaintiff on the pleadings and has never physically appeared in this Court. Based on Priestley, therefore, the Court finds that Mr. Wilborn's involvement is not a "special circumstance" under EAJA that would make an award unjust.

The Court's conclusion, however, is limited to the circumstances of requests for EAJA fees in Social Security appeals. Such a finding is logical because Social Security practice in District Courts within the Ninth Circuit, to which Mr. Wilborn is admitted, is controlled by the same Ninth Circuit law. The Court's finding also takes into consideration the lack of objection from the Commissioner.

In relying on the interpretation of EAJA to award Mr. Wilborn fees, the Court's finding is not based on Winterrowd v. Am. Gen. Annuity Ins. Co., 556 F.3d 815 (9th Cir. 2009), where the decision to award fees was not made in the context of EAJA. In other words, the Court makes no determination as to whether Mr. Wilborn "appeared" or "practiced" in violation of the Local Rules. Moreover, in light of the fact that the Court raised this issue and based on Mr. Wilborn's statement that he is no longer accepting work for new cases in this Court, there is no need to address the issue of whether sanctions could, or should, issue.

II.     EAJA Analysis

Under the EAJA, a prevailing party will be awarded reasonable attorney fees, unless the government demonstrates that its position in the litigation was "substantially justified," or that "special circumstances make an award unjust." 28 U.S.C. § 2412 (d)(1)(A). An award of attorney fees must be reasonable. Sorenson v. Mink, 239 F.3d 1140, 1145 (9th Cir. 2001). "[E]xcessive, redundant, or otherwise unnecessary" hours should be excluded from a fee award, and charges that are not properly billable to a client are not properly billable to the government. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). A court has wide latitude in determining the

6

1 number of hours reasonably expended. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988).

Plaintiff requests a total of $9,083.25 for attorney time spent in litigating this action. This breaks down to a total of 52.1 attorney hours billed at 2009 and 2010 rates. In support of her request, Plaintiff submits itemizations of time spent by (1) Mr. Wilborn, from October 20, 2009, through December 3, 2010; and (2) Ms. Bosavanh, from September 15, 2009, through November 19, 2010.

Defendant opposes the fee request because he contends that his position in the litigation was substantially justified. Alternatively, he contends that the requested time is excessive.

A.    *Substantial Justification*

To show substantial justification for conduct, the Commissioner has the burden of establishing that the conduct had a reasonable basis both in law and fact based on the record of both the underlying government conduct at issue and the totality of circumstances present before and during litigation. *Hardisty v. Astrue*, 529 F.3d 1072 (9th Cir. 2010); *Sampson v. Chater*, 103 F.3d 918, 921 (9th Cir. 1996). The Commissioner is substantially justified if his position met "the traditional reasonableness standard-that is 'justified in substance or in the main,' or 'to a degree that could satisfy a reasonable person.'" *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (internal citations omitted). The Supreme Court has explained that "a position can be justified even though it is not correct, and we believe it can be substantially ... justified ... if it has a reasonable basis in law and fact." *Id.* (citing *Pierce v. Underwood*, 487 U.S. 552, 566 n. 2 (1988)). The Commissioner's position must be substantially justified "with respect to the issue on which the court based its remand." *Flores v. Shalala*, 49 F.3d 562, 569 (9th Cir. 1995).

In the underlying litigation, the Court based its remand on the ALJ's failure to explain why she rejected the opinion of Plaintiff's treating physician, Dr. Kearns. The Court explained:

> Here, the ALJ neither directly nor indirectly suggests why she rejected Dr. Kearns' opinions. In fact, the ALJ did not even discuss the entire September 2008 opinion and instead stated only, "[w]ith respect to the carpal tunnel syndrome, her doctor has opined that the claimant can lift 5 pounds frequently and 10 pounds occasionally." AR 26. The ALJ also noted that Dr. Kearns did not preclude full-time work, but she failed to discuss Dr. Kearns' belief that Plaintiff would be limited to sedentary work. AR 26.

More importantly, it would be a stretch for the Court to make any "specific, legitimate" inferences from the ALJ's decision. Dr. Kearns' opinions, while they may have placed Plaintiff in a different exertional category and may ultimately affected the outcome, were not significantly different than Dr. Ginsburg's so as to make any inferences distinguishing the two obvious. In other words, the Court cannot make any meaningful inferences from the ALJ's reasons for accepting Dr. Ginsburg's opinion.

In attempting to support the ALJ's analysis, the Commissioner explained why Dr. Ginsburg's opinion was supported by the evidence and then suggested reasons why the ALJ may have rejected Dr. Kearns' opinions. Whether the opinion of non-examining physician Dr. Ginsburg was supported, however, has no bearing on the ALJ's failure to explain why she rejected Dr. Kearns' opinion in the first instance. Indeed, in *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit was clear in explaining the significance of the treating source and the requirements that must be met in rejecting the opinion.

In fact, the ALJ was at least partly incorrect in her reasoning for adopting Dr. Ginsburg's opinion. As the Court explained, the ALJ gave significant weight to Dr. Ginsburg's opinion because it was based upon a thorough review of the evidence, yet the opinion was rendered almost one year before nerve conduction studies suggested significant wrist impairments.

Moreover, as the Court explained in its order, the Commissioner's remaining attempts to support the ALJ's rejection were improper *post hoc* rationalizations.

> To the extent that Defendant suggests reasons for the rejection, the attempt amounts to an improper post hoc rationalization. *Pinto v. Massanari,* 249 F.3d 840, 847 (9th Cir. 2001) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."). For example, Defendant contends that Dr. Kearns' March 2008 opinion was unreliable because Dr. Kearns relied "mostly on Plaintiff's symptoms rather than on objective medical evidence, and assessed limitations going back to 2001 and predating Plaintiff's alleged onset of disability by more than 5 years." Opposition, 7. While this may be true, this rationale is not evident anywhere in the ALJ's decision. Similarly, Defendant suggests that the opinions were inconclusive because Dr. Kearns indicated that she was unable assess certain limitations. Again, this may be a valid reason for rejecting the opinions, but the Court cannot affirm the ALJ's treatment of the medical evidence on a basis that is not referenced, either directly or indirectly, in the ALJ's decision.

Therefore, given the importance of Dr. Kearns' opinion and the Commissioners' incorrect analysis and improper reliance on reasons not set forth by the ALJ, the Court finds that the Commissioner's position was not reasonably based in law or fact. As such, it was not substantially justified.

B.  *Fees Requested*

   1.   Mr. Wilborn's Time

Defendant first contends that the time spent by Mr. Wilborn in preparation of the Opening Brief (17 hours) is excessive and should be reduced by 10 hours.

As an initial matter, the Court cautions Defendant against continuing to make comparisons between the Confidential Letter Brief and the Opening Brief in an effort to undermine the time spent on the Opening Brief. Defendant has even taken the time to go through the two documents and compare every line to compile a list of "original sections." This Court has previously explained that the Confidential Letter Brief is "for settlement purposes only and will not be used as evidence against a party to these proceedings." *Belcher v. Astrue*, 2010 WL 5111435, * 1 (E.D.Cal. 2010). Continued comparison by Defendant is unnecessary.

The Court agrees, however, that certain time spent was excessive. The Court does not need to compare the Confidential Letter Brief to the Opening Brief to conclude that spending 7.0 hours reviewing the ALJ's decision, analyzing the record and preparing the Confidential Letter Brief likely framed the issues and allowed some cross-over for the Opening Brief. While the Court appreciates the need to re-examine the materials prior to preparing the Opening Brief, and the need to spend additional time to prepare the Opening Brief, an additional 17.0 hours is excessive.

The Opening Brief, excluding the table of contents, was 27 pages and presented 5 well-developed issues. Based on the prior time spent in preparation of the Confidential Letter Brief and the nature of the issues presented in the Opening Brief, the Court finds that this time should be reduced by 5.0 hours. This will compensate Mr. Wilborn for an additional 12.0 hours for preparing the Opening Brief and, contrary to the Commissioner's argument, this additional time is not unreasonable or excessive given the high quality of the product presented to the Court.

Defendant also objects to the 2.5 hours spent by Mr. Wilborn on December 3, 2010, in drafting the EAJA application and supporting documents.

1      Time spent in preparation of an EAJA fee motion is compensable, but must be
2 reasonable. *Atkins v. Apfel*, 154 F.3d 986, 989 (9th Cir. 1998).
3      Here, Mr. Wilborn billed 2.5 hours for "Drafting EAJA application and supporting
4 documents."  Defendant suggests that this time should be reduced by 2.0 hours because the
5 application "is virtually identical to the one Mr. Wilborn prepared in the case *Downey v. Astrue*,
6 No. 1:09cv00812 SKO."  Opposition, at 8.  Similar to what Defendant has attempted to
7 accomplish with the Confidential Letter Brief, he now attaches the EAJA petition in *Downey* and
8 invites the Court to compare the documents.  Again, the Court declines to do so and recognizes
9 that although documents may be similar, the similarity does not negate the underlying work that
10 must be performed prior to finalizing the document.
11     Moreover, preparing an itemized time sheet for an EAJA fee motion is not a clerical task
12 as counsel must review the time records to make sure the time is properly billed to the client,
13 ensure that time billed is accurate and redact any privileged information.  *See Fortes v. Astrue,*
14 *2009 WL 3007735, *4 (S.D. Cal. 2009)* (allowing 2.75 hours reviewing time records and logs to
15 prepare a billing sheet in support of an EAJA motion).
16     Nonetheless, the Court will reduce the 2.5 hours by .5 hours based on the boilerplate
17 nature of the EAJA petition.  The burden is on Defendant to show that his position was
18 substantially justified and therefore no factual argument was included.  Counsel merely had to
19 plug in the hours requested and calculate the total fee request.  This allows Mr. Wilborn
20 compensation for 1.5 hours for preparing the itemized time sheet and .5 for preparation of the
21 application.
22     Based on the above reductions, Mr. Wilborn should be compensated for 12.0 hours for
23 time spent from July 6, 2010, through July 12, 2010, and for 2.0 hours for time spent on
24 December 3, 2010.  There were no objections to the remaining 17.0 hours and that time will be
25 also be allowed.
26     2.    Ms. Bosavanh's Time
27         *Duplicative Time*
28

As is evident from the billing statements, Mr. Wilborn is performing a majority of the research and brief writing. Therefore, certain time spent performing duplicative work will not be compensated. The Government should not be forced to pay increased fees simply because Ms. Bosavanh has decided to employ another attorney to actually write the briefs. For example, the Commissioner objects to .5 hours spent on March 12, 2010, for "Receive and review transcripts; check contents thereof." Mr. Wilborn, the actual brief writer, is being compensated for his review of the record. There is no indication that Mr. Wilborn was unable to determine if the record was complete. Moreover, although Ms. Bosavanh suggests that she had a professional responsibility to review the record to familiarize herself with facts because she was the attorney signing the briefs, the Court takes this necessity into consideration in allowing for time to review the *actual* briefs. Therefore, any time spent by Ms. Bosavanh on this task, though it is a task generally performed by an attorney, is duplicative.

Similarly, Ms. Bosavanh bills .2 hours on June 10, 2010, for reviewing the Commissioner's response to the Confidential Letter Brief and forwarding it to Mr. Wilborn. She also bills .4 hours on July 26, 2010, for reviewing the opposition to the Opening Brief and forwarding it to Mr. Wilborn. Again, as Mr. Wilborn is the brief writer, time spent for reviewing the responses is captured in Mr. Wilborn's time spent in preparation of the briefing and is therefore duplicative. Moreover, forwarding a document is a clerical task.

There are certain instances, however, where some overlap is warranted. Time spent by Ms. Bosavanh reviewing Mr. Wilborn's briefing and signing the documents is compensable based on her responsibility to the Court under Rule 11. Ms. Bosavanh spends a total of 2.3 hours (May 3, July 12 and September 9, 2010) in this capacity. The Court has previously allowed .5 hours per document and will therefore permit 1.5 hours for review and submission of the Confidential Letter Brief,[3] Opposition and Reply.

*Clerical Time*

---

[3] Though the Confidential Letter Brief is not submitted to the Court, Ms. Bosavanh is entitled to review it prior to signing the document.

11

Defendant next objects to various entries based on his often incorrect characterization of the tasks as clerical in nature.[4]

On October 30, 2009, Ms. Bosavanh billed 1.5 hours for drafting the complaint and related documents and e-filing the documents with this Court. Defendant suggests that this time be cut by .5 hours because filing documents is clerical in nature. Time spent filing documents with the Court is not, however, a clerical task. *See eg. Williams v. Apfel*, 2000 WL 684259, *2 (S.D. Ind. 2000) (preparing the complaint and return of service documents and reviewing the answer, the Commissioner's brief, motions, and court orders are not tasks typically performed by clerical staff, as the attorney is responsible for seeing that the tasks are performed correctly). Nonetheless, the Court agrees that 1.5 hours for preparation and filing of a boilerplate complaint is excessive and will allow 1.0 hour.

Defendant next objects to time spent preparing/reviewing documents related to service. Again, these tasks are routinely performed by an attorney. *See eg. Williams v. Apfel*, 2000 WL 684259, *2 (S.D. Ind. 2000). Ms. Bosavanh bills a total of 1.2 hours for these tasks on November 6, November 16 and November 19, 2010, though the Court finds that this amount of time is excessive. The Court will allow .3 hours for these tasks.

Defendant further objects to a total of 2.2 hours spent in requesting, preparing and submitting three extensions of time (March 26 and 29, July 2 and 6, and August 4 and 6, 2010). Defendant reasons that "to bill the Commissioner for agreeing to an accommodation for Plaintiff would be inequitable." Opposition, at 10. As this Court has previously explained, requests for extensions of time, regardless of the requesting party, are common in Social Security cases and often benefits both parties. Based on the Court's prior compensation at a rate of .2 hours for one extension, Plaintiff has agreed to cut the 2.2 hours to .6 hours. The Court finds that this is reasonable and Ms. Bosavanh will therefore be compensated .6 hours for this work.

Finally, Defendant objects to the time spent by Ms. Bosavanh in preparation of her EAJA time report.

---

[4] The Court has ruled numerous times in the past that many of the tasks that Defendant contends are clerical are in fact tasks performed by an attorney that should be reimbursed. Notwithstanding the Court's clear position on these issues, Defendant continues to assert these incorrect arguments.

1    Here, Ms. Bosavanh billed 1.2 hours for preparation of the "EAJA time report."
2 Defendant contends that this is clerical in nature and unreasonable because she "presumably
3 documented her time entries contemporaneously on the day each task was performed" and did
4 not need additional time to print out this information.  Contrary to Defendant's suggestion,
5 preparing an itemized time sheet for an EAJA fee motion is not a clerical task as counsel must
6 review the time records to make sure the time is properly billed to the client, ensure that time
7 billed is accurate and redact any privileged information.  *See* Fortes v. Astrue, 2009 WL
8 3007735, *4 (S.D. Cal. 2009) (allowing 2.75 hours reviewing time records and logs to prepare a
9 billing sheet in support of an EAJA motion).  The Court will therefore allow this 1.2 hours.
10   Defendant does not object to Ms. Bosavanh's remaining time and it will be allowed.

11                                **AWARD**

12   Plaintiff's motion is therefore GRANTED.  Plaintiff is entitled to an award in the total
13 amount of $7,252.91 broken down as follows:
14   Mr. Wilborn:
15   .75 hours at $172.24 per hour AND 30.25 hours at $174.64 per hour    $5,412.04
16   Ms. Bosavanh:
17   4.3 hours at $172.24 per hour AND 6.3 hours at $174.64 per hour    $1,840.87
18   This amount is payable to Plaintiff pursuant to *Astrue v. Ratliff*, 130 S. Ct. 2521 (2010).
19
20   IT IS SO ORDERED.
21        Dated:   **July 14, 2011**                    /s/ **Dennis L. Beck**
                                                    UNITED STATES MAGISTRATE JUDGE